COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

SOLOMON WEATHERBY,                                )

                                                                              )             
No.  08-99-00452-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
210th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )                
(TC# 990D03422)

                                                                              )

 

O
P I N I O N

 

Appellant, Solomon
Weatherby, appeals a conviction for murder and sentence of 48 years= imprisonment.  Three issues are raised:  (1) whether the evidence was legally
sufficient to support the judgment of guilt; (2) whether he received effective
assistance of counsel; and (3) whether the trial court erred in admitting
evidence of an extraneous offense.  We
affirm the judgment of the lower court.








On September 20,
1998, Appellant was caring for his daughter, Vivian, while his wife was out of
the apartment.  According to his own
testimony, Appellant left the baby alone for a few minutes and upon returning
discovered something was wrong with her. 
He stated that Vivian did not respond to him.  He testified her body was limp, she had
bubbles in her mouth, and her eyes rolled back in her head.  He attempted to give her CPR and also shook
her.  Angelica Hernandez, Appellant=s wife, returned to the apartment and
called the Texas Tech Children=s
Miracle Hotline for advice.  Appellant
told the doctor at the hotline his child had choked and was now having problems
breathing.  After a brief conversation,
the doctor recommended the child be taken immediately to the hospital.

Upon arrival at
the emergency room, it was discovered that Vivian had suffered severe head
injuries and required immediate surgery. 
X-rays revealed she had suffered multiple injuries.  Vivian had fractures in her ribs, right hip,
and both distal thigh bones.  A CAT scan
also indicated she had bleeding around the brain from both old and recent
injuries.  Her brain was severely
swollen.

Vivian never
recovered from the injuries.  An
extensive autopsy was conducted and the cause of death was determined to be
brain damage as a result of severe acceleration force trauma from shaken baby
syndrome.  Appellant admitted he had
shaken the child, but insisted he was only trying to help her.  After an investigation, Appellant was charged
with the murder of his eight-month-old daughter, Vivian Maylika Weatherby.  Appellant now raises three issues on appeal.

LEGAL
SUFFICIENCY

In his first
issue, Appellant argues the evidence was legally insufficient to support the
verdict of guilt.  He raises two claims
with regard to this issue.  First, he
claims the evidence was legally insufficient to prove he intended to cause
serious bodily injury to his child. 
Second, he argues the evidence was legally insufficient to prove venue
in El Paso County.








In evaluating the
legal sufficiency of evidence of guilt, an appellate court views the evidence
in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Whitaker
v. State, 977 S.W.2d 595, 598 (Tex.Crim.App. 1998); Garcia v. State,
16 S.W.3d 401, 404 (Tex.App.--El Paso 2000, pet. ref=d).  This same standard of review is used in
reviewing the sufficiency of both direct and circumstantial evidence.  Burden v. State, 55 S.W.3d 608, 613
(Tex.Crim.App. 2001).  It is not our role
to judge the credibility of the evidence presented or to substitute our
evaluation of the facts for those of the jury. 
Barnes v. State, 876 S.W.2d 316, 321 (Tex.Crim.App. 1994); Sharpe
v. State, 881 S.W.2d 487, 488 (Tex.App.--El Paso 1994, no pet.).  Moreover, reconciliation of conflicts in the
evidence is within the exclusive province of the jury.  Losada v. State, 721 S.W.2d 305, 309
(Tex.Crim.App. 1986).  Our sole duty is
to determine if the explicit and implicit findings of the jury are rational
when the evidence admitted at trial is viewed in a light most favorable to the
verdict.  Adelman v. State, 828
S.W.2d 418, 422 (Tex.Crim.App. 1992); Garcia, 16 S.W.3d at 404.  

Intent
to Cause Serious Bodily Injury 

Appellant was
found guilty of murder after a lengthy jury trial.  The court=s
charge instructed the jury as follows:

A person commits the offense of murder
if he intentionally or knowingly causes the death of an individual; or if he
intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of an individual.

 

Therefore, if you believe from the
evidence beyond a reasonable doubt that the defendant, SOLOMON WEATHERBY, did,
in El Paso County, Texas, on or about the 20th day of September 1998, with
intent to cause serious bodily injury to an individual, namely, VIVIAN
WEATHERBY, commit an act clearly dangerous to human life, to-wit:  shaking VIVIAN WEATHERBY, that caused the
death of the said VIVIAN WEATHERBY, then you will find the defendant, SOLOMON
WEATHERBY, guilty of the offense of murder as alleged in the indictment.

 








Appellant contends the application
paragraph in the charge required the jury to find he intended to cause serious
bodily injury to his daughter.  He argues
the evidence was legally insufficient to prove he intended to cause such
injury.  In particular, Appellant relies
on his own testimony at trial that the injuries occurred accidentally while he
was trying to elicit a response from the child or while he attempted to perform
CPR.  He contends the State offered no
other evidence to establish the element of intent.

Texas courts have
held that when an adult defendant has had sole access to a child at the time
its fatal injuries are sustained, the evidence is sufficient to support a
conviction for murder.  See Garcia,
16 S.W.3d at 405 and the cases cited there. 
Proof of a culpable mental state, such as intent to cause serious bodily
injury, is often circumstantial and can be inferred from the acts, words, and
conduct of a defendant.  See Hernandez
v. State, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991); Dues v. State,
634 S.W.2d 304, 305 (Tex.Crim.App. 1982); Dunn v. State, 13 S.W.3d 95,
99 (Tex.App.--Texarkana 2000, no pet.). 
In determining whether an assault was committed with the intent to cause
serious bodily injury, the nature and extent of the injuries and the relative
size and strength of the parties may be considered.  Sowell v. State, 503 S.W.2d 793, 795
(Tex.Crim.App. 1974); Lindsey v. State, 501 S.W.2d 647, 648
(Tex.Crim.App. 1973); Brown v. State, 704 S.W.2d 506, 507
(Tex.App.--Dallas 1986, pet. ref=d).  Any violent assault on an infant may be
reasonably expected to cause death.  Lindsey,
501 S.W.2d at 648.

In this case, the
State provided ample evidence from which the jury could reasonably infer the
injuries suffered by Vivian Weatherby were intentionally inflicted by
Appellant.  In both his written
confession and trial testimony, Appellant admitted shaking his child.  But, he maintained any injuries she sustained
were caused accidentally.  However, three
separate medical experts testified that Vivian=s
injuries were not accidental and could not have been caused as Appellant
suggested.








Dr. Roberto
Canales, a pediatrician who treated Vivian at Columbia West Hospital, testified
that her head injuries were caused by shaking and there was no external
evidence of accidental injury.  

Dr. Harry Wilson,
a pediatric pathologist and expert in child abuse and causes of child death, testified
at length about the autopsy findings.  He
explained the autopsy revealed markers or medical evidence suggesting Vivian=s injuries were a result of violent
shaking.  He told the jury the baby
suffered from severe swelling in the brain as a result of acceleration force
trauma.  This trauma left the child brain
dead.  He also explained that Vivian had
suffered multiple bone fractures throughout her body that were consistent with
Shaken Baby Syndrome.  Dr. Wilson specifically
testified Vivian=s
injuries could not have been caused by tossing her in the air, bouncing her on
a knee, or jogging with her.  Moreover,
he compared her internal injuries to those that could occur if a child fell off
a four-story building, was kicked like a football, or was in a
forty-mile-an-hour car crash.  When
defense counsel inquired whether a child could suffer from shaken baby syndrom
as a result of unintentional or accidental actions, Dr. Wilson responded, ASir, shaken baby is not an
accident.  Somebody who does that type of
forceful violence on a child is inflicting harm on that child.  That is not appropriate in any context.@ 
The doctor also testified that this type of act is one clearly dangerous
to human life.  The jury heard through
the testimony of Dr. Wilson that the autopsy report concluded Vivian Weatherby
died as a result of damage to brain by severe acceleration force trauma, as a
result of being shaken.  








The third expert
witness testifying on behalf of the prosecution was Dr. Chetan Moorthy, a
pediatric radiologist.  He explained that
he had served as a consultant to the coroner in determining Vivian Weatherby=s cause of death.  He gave detailed testimony about the injuries
discovered through x-rays and CAT scans. 
This imaging evidence indicated Vivian had suffered serious injuries in
the past in addition to the fatal injuries inflicted near the time she was
taken to the hospital on September 20, 1998. 
Dr. Moorthly expressly stated that Vivian=s
injuries could not be caused by CPR. 
Instead, he concluded the fatal injuries were nonaccidental in
nature.  This conclusion was discussed at
length and then reinforced when he was recalled for examination later in the
trial.  At that time the following exchange
occurred:

Q:        And in regards to the--Mr. Segall asked
you in regards to the force necessary to cause these injuries, what type of
force is required to cause these injuries, the ones you saw?

 

A:         We=re
talking about all of them now?

 

Q:        The recent ones.

 

A:         Okay.

 

Q:        That you would consider the recent ones.

 

A:         Well, let me just list the recent ones
so we agree.

 

Q:        Yeah.

 

A:         There=s
the bleeding on the brain with swelling on the brain, and then there are
fractures of the ribs, and there=s
a fracture on the right hip, both distal thigh bones.  Those are all fractures I thought would have
happened at the same time.  And the
mechanisms that I believe are involved in that -- those injuries are very
violent shaking, either holding the chest squeezing and or holding the legs or
both.

 

Q:        And it had to be violent?

 

A:         It has to be extremely violent.

 








In this case,
Appellant does not contest that Vivian was alone with him at the time she was
fatally injured.  Moreover, Appellant
admitted to shaking the child.  Vivian=s injuries were extensive, severe, and
ultimately fatal.  Because Appellant is
an adult and his victim, an eight-month-old infant, his actions were of a type
reasonably expected to cause death.  Lindsey,
501 S.W.2d at 648.  The only evidence of
accident adduced by Appellant is his own self-serving statement.  Compare Wyatt v. State, 23 S.W.3d 18,
30 (Tex.Crim.App. 2000)(where the Court found legally sufficient evidence of a
defendant=s intent
to commit serious bodily injury despite defendant=s
statement that the killing was accidental). 
All other evidence indicates Appellant engaged in conduct clearly
dangerous to his daughter=s
life.  Garcia, 16 S.W.3d at
405.  Viewing the evidence in the light
most favorable to the prosecution, we conclude that a rational trier of fact
could find Appellant intentionally or knowingly caused the death of Vivian
Weatherby.  Adelman, 828 S.W.2d at
422.  The evidence is legally sufficient
to support the jury=s conclusion
that Appellant intended to cause serious bodily injury to his child.  The first portion of Appellant=s first issue is therefore
overruled.  

Venue








Appellant also
argues the evidence was legally insufficient to prove venue was proper in
El Paso County.  We begin by noting
that failure to establish venue in the county of prosecution is reversible
error.  Black v. State, 645 S.W.2d
789, 791 (Tex.Crim.App. 1983); Lozano v. State, 958 S.W.2d 925, 929 (Tex.App.--El
Paso 1997, no pet.).  Venue is presumed
to have been proven in the trial court unless the record affirmatively shows
otherwise or venue is made an issue at trial. 
 Tex.R.App.P. 44.2(c)(1); Clark v.
State, 558 S.W.2d 887, 891 (Tex.Crim.App. 1977); Valdez v. State,
993 S.W.2d 346, 349 (Tex.App.--El Paso 1999, pet. ref=d).  A motion for a directed verdict of acquittal
expressly challenging the proof of venue, such as the motion Appellant raised
in the court below, timely raises and preserves the issue for appeal.  Black, S.W.2d at 792-93.  Venue is not a constituent element of the
offense of murder, and it need be proved only by a preponderance of the
evidence.  Id. at 793.  It may be established by direct or circumstantial
evidence, and the trial court may make reasonable inferences from the evidence
in reaching its conclusion that venue has been proven.  Valdez, 993 S.W.2d at 349.

In the case before
us there was abundant evidence from which the court could conclude that venue
was properly established in El Paso County, Texas.  First, Detective Medina testified on direct
examination that he was dispatched to Columbia East hospital to investigate a
possible injury to a child.  He explained
the hospital is located in El Paso County, Texas.  Second, Appellant=s
written statement to the police was read into the record and also admitted into
evidence as State=s Exhibit
2.  In the statement, Appellant states he
has been living in El Paso for eight years. 
He included his home address, which is an apartment in El Paso.  He explains that the events preceeding Vivian=s admission to the hospital occurred in
this same apartment.  Third, Rosa Maria
Hernandez, Vivian=s
grandmother, also specifically testified to the street address of Appellant and
his family and indicated that the street was located in El Paso.  Her testimony of the address was the same as
that listed by Appellant in his written statement.

Appellant
complains that no one specifically testified the offense took place in El Paso
County, Texas.  However, it may be
reasonably inferred from the circumstantial evidence that the offense occurred
there.  Because the evidence demonstrated
the offense took place in the city of El Paso, the trial court was free to take
judicial notice that El Paso is a city within El Paso County.  Lozano, 958 S.W.2d at 929.  Accordingly, we find the trial court did not
err in denying the motion for directed verdict on this matter.  Therefore, Appellant=s
first issue is overruled in toto.

 








EFFECTIVE
ASSISTANCE OF COUNSEL

Appellant argues
he received ineffective assistance of counsel because the trial court would not
allow his attorney to withdraw from the case. 
Appellant claims one of his three attorneys at trial, Jaime Olivas, had interviewed
Appellant=s wife
and was prepared to testify that she had admitted to causing some of Vivian=s fractures.  Mr. Olivas moved to withdraw from the case in
order to provide this testimony after it became clear that Appellant=s wife would not testify herself.  The trial court denied the request to
withdraw.  Appellant contends the outcome
of the case would have been different had Mr. Olivas been able to testify.

Claims of ineffective
assistance of counsel are governed by the two-part test established by Strickland
v. Washington.[1]  Hernandez v. State, 988 S.W.2d 770,
770 (Tex.Crim.App. 1999).  First, a
defendant must prove he received insufficient assistance from counsel.  Thompson v. State, 9 S.W.3d 808, 812
(Tex.Crim.App. 1999).  This requires a
demonstration that counsel=s
performance fell below an objective standard of reasonableness.  McFarland v. State, 928 S.W.2d 482,
500 (Tex.Crim.App. 1996), cert. denied, 519 U.S. 1119, 117 S.Ct. 966,
136 L.Ed.2d 851 (1997).  Second, Strickland
requires a defendant to affirmatively prove counsel=s
inadequate performance prejudiced his defense. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  Prejudice is established by showing there is
a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.  Id.








However, claims of
ineffective assistance of counsel based on an action by the trial court which
prevented the defense attorney from effectively performing his or her duties
are distinguished from those claims based solely on the actions of
counsel.  See Strickland, 466 U.S.
at 686, 104 S.Ct. at 2063-64 (distinguishing between instances in which the
action of the attorney deprives a defendant of adequate legal assistance and
those in which an action of the government interferes with an attorney=s ability to provide effective
assistance); Murray v. State, 24 S.W.3d 881, 890 n.3 (Tex.App.--Waco
2000, pet. ref=d).  In these cases, like the one before us today,
the appellate claim is not focused upon the deficient representation of
counsel, but rather the limitation placed on counsel=s
representation by the trial court.  Id.  Because the gravamen of the complaint is
against the action of the lower court, we review the issue to determine whether
the court erred, not whether trial counsel was ineffective.  Murray, 24 S.W.3d at 890 n.3; Ruiz
v. State, 891 S.W.2d 302, 305-06 (Tex.App.--San Antonio 1994, pet. ref=d). 
Our concern is whether the trial court prevented defense counsel from
doing something he had the legal right to do. 
Jackson v. State, 992 S.W.2d 469, 476 (Tex.Crim.App. 1999).

Jaime Olivas was
appointed to represent Appellant at trial. 
In August 1999, Mr. Olivas filed a motion requesting to be removed as
counsel for Appellant.  He cited two main
reasons for the request.  First, Mr.
Olivas was in fundamental disagreement with Appellant regarding the objectives,
preparation, and presentation of the defense strategy.  Second, Mr. Olivas was the only potential
witness that could testify on behalf of the defense to statements made by
Angelica Hernandez about her daughter=s
old injuries.  The trial court denied the
motion to withdraw, but also appointed the El Paso County Public Defender=s Office as co-counsel to Mr. Olivas.








At trial, Mr.
Olivas participated actively in Appellant=s
defense.  He gave the opening statement
and cross-examined two of the State=s
witnesses.  After the State rested, the
defense called Angelica Hernandez to testify outside the presence of the
jury.  Ms. Hernandez indicated she would
be unwilling to testify on behalf of Appellant and Aplead
the 5th.@  Defense counsel then called Jaime Olivas as a
witness in order to make a bill of exception for the appellate record.  Mr. Olivas testified that he had spoken to
Angela Hernandez on several occasions in preparation for the trial.  He indicated she had told him of one or more
incidents in which Vivian may have been unintentionally hurt.  He felt this information would be helpful in
explaining Vivian=s older
injuries.  He also testified to his
belief that any testimony he could now give would not be valuable because the
jury considered him an advocate, rather than an unbiased witness.  As a result, he felt the defense team had
been forced to abandon the argument that another person had inflicted Vivian=s fatal injuries.

To determine
whether the trial court=s
actions lead to ineffective assistance of counsel, we must determine whether
Attorney Olivas would have had a legal right to testify to the statements made
by Angela Hernandez.  Jackson, 992
S.W.2d at 476.  Appellant argues this
testimony would have been admissible under Rule 803(24).

Statements
Against Interest:  Rule 803(24)








Under Rule 803(24)
of the Texas Rules of Evidence, a declaration against interest is admissible
only if it is self-inculpatory with corroborating circumstances to indicate the
trustworthiness of the statements.  Dewberry v. State, 4 S.W.3d 735, 751
(Tex.Crim.App. 1999).  A statement
against interest is one Awhich
was at the time of its making so far contrary to the declarant=s pecuniary or proprietary interest, or
so far tended to subject the declarant to civil or criminal liability . . .
that a reasonable person in declarant=s
position would not have made the statement unless believing it to be true.@ 
Tex.R.Evid. 803(24).  We must begin, therefore, by examining the
statement at issue to determine if it falls within the parameters of the rule.

Mr. Olivas= testimony outside the presence of the
jury provides the only account of Ms. Hernandez=s
alleged statement.  His testimony
included the following exchanges, on direct examination:

Defense:           Now during the course of these
discussions, she described to you at least one or more incidents in which the
child may have been hurt unintentionally, but you nevertheless, due to actions
of her and perhaps her husband as well, is that true?

 

Mr.
Olivas:       That is correct, if I may
eloraborate.

 

Defense:           No, I don=t
want you to elaborate.  She told you
about this?

 

Mr.
Olivas:       Yes.

 

.               .               .

 

Defense:           And the record can reflect I=m consulting with cocounsel, which
includes--so that we have a full understanding, your testimony would be--it
would be in regard to this prior incident in which this child could have gotten
hurt; is that correct?

 

Mr.
Olivas:       Yes.

 

On cross-examination:

 

Mr.
Olivas:       But if--the substance of my
testimony would be that on numerous occasions Ms. Hernandez and Mr. Weatherby
engaged in some form of family altercations where this--the child was in close
vicinity and indeed had somehow or another been struck.

 

The
State:         So you=re saying that your testimony would be
that Ms. Angela Hernandez told you that they were, in her as well as her
husband were, involved in family altercations and as a result of that, maybe
the baby could have been hurt, is that what you=re
saying?








Mr.Olivas:        Sure.

 

A review of this
testimony fails to establish Ms. Hernandez=s
statements to Attorney Olivas inculpated her in any way.  Dewberry, 4 S.W.3d at 751.  The statements that her child was hurt during
family altercations does not identify who struck Vivian or whether an injury
resulted.  There is also no indication of
whether Vivian was struck accidentally or intentionally.  This statement is not clearly contrary to Ms.
Hernandez=s
pecuniary or proprietary interest and it does not subject her to civil or
criminal liability.  Tex.R.Evid. 803(24).  As such, this statement does not fall within
the hearsay exception provided by Rule 803(24). 
Because this statement would not have been admissible, Appellant has
failed to prove his counsel was prevented from doing something he was legally
entitled to do.  Jackson, 992
S.W.2d at 476.  We find no error on the part
of the trial court and as a result, no merit to Appellant=s claim of ineffective assistance of
counsel.  Appellant=s second issue on appeal is overruled.

EXTRANEOUS
OFFENSE EVIDENCE 

With his third
issue, Appellant argues evidence of the older injuries sustained by Vivian was
inadmissible.  He relies on three
sub-issues to support this contention: 
(1) the State provided insufficient notice of its intent to introduce
the evidence in its case-in-chief; (2) the probative value of the evidence was
outweighed by substantial prejudice to the defense; and (3) there was
insufficient proof of Appellant=s
responsibility for the older injuries.








Admission of
extraneous offense evidence is generally within the trial court=s discretion.  Montgomery v. State, 810 S.W.2d 372,
390-91 (Tex.Crim.App. 1991)(opinion on rehearing).  If the court=s
decision is within the zone of reasonable disagreement, it will be upheld on
appeal.  Id.  Evidence of extraneous unadjudicated offenses
may be admissible if the defendant opens the door to the admission of such
evidence.  Lopez v. State, 990
S.W.2d 770, 777 (Tex.App.--Austin 1999, no pet.); Monkhouse v. State,
861 S.W.2d 473, 476 (Tex.App.--Texarkana 1993, no pet.).  If the defense creates a false impression in
the minds of the jury about otherwise irrelevant unadjudicated offenses, the
prosecution may address and correct this impression through evidence of
extraneous offenses.  Creekmore v.
State, 860 S.W.2d 880, 892 (Tex.App.--San Antonio 1993, pet. ref=d). 


In this case,
defense counsel asked Dr. Canales three different questions about whether
Vivian had been abused at an earlier time. 
Dr. Canales=
responses left the impression no prior abuse had occurred.  During this exchange, defense counsel
expressly alluded to broken bones and child abuse.  Again, Dr. Canales=
response seemed to indicate Vivian had not suffered from any earlier bone
fractures.  In response to this
cross-examination by the defense, the State proposed to introduce evidence of
Vivian=s old
injuries.  The court heard arguments from
both parties and testimony from Dr. Wilson outside the presence of the
jury.  The trial court then overruled the
defense objection to introduction of evidence relating to the older
injuries.  A limiting instruction
regarding this evidence was included in the jury charge.[2]








A fair reading of
the record supports the State=s
contention and the trial court=s
reasoning that the defense opened the door to the topic of older injuries.  Lopez, 990 S.W.2d at 777; Monkhouse,
861 S.W.2d at 476.  Defense counsel=s cross-examination of Dr. Canales also
left the false impression Vivian had not suffered from broken bones in the
past.  The trial court properly allowed
admission of evidence to correct this impression.  Creekmore, 860 S.W.2d at 892.  We find no abuse of discretion or error in
the admission of evidence relating to Vivian=s
older injuries.  Appellant=s third issue is overruled.[3]

The judgment of
the trial court is affirmed.

 

 

 

 

September
5, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

McClure, J., Not participating

 

(Do Not Publish)











[1]
466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  





[2]
The charge included the following instruction:

 

You are instructed that any evidence concerning broken bones
or other injuries, if any, of the deceased, VIVIAN WEATHERBY, that occurred
prior to September 20, 1998, may only be considered if:  (1) you believe beyond a reasonable doubt
that the defendant committed such acts, and (2) even then, you may only
consider said evidence in determining its bearing on relevant matter (sic),
including:  (a) the state of mind of the
defendant; and (b) the previous and subsequent relationship between the
defendant and the child.  You are not to
consider this evidence for any other purpose.





[3]
Because we find defense counsel opened the door to the topic of Vivian=s older injuries, we need not address
Appellant=s
sub-issues individually.