**Johnny Earl LINDSEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 47199.

Court of Criminal Appeals of Texas.

Oct. 31, 1973.

Rehearing Denied Nov. 21, 1973.

John Ellis, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is murder; the punishment, twenty-five (25) years.

Trial was before the court without the intervention of a jury.

Appellant raises two grounds of error, both of which go to the sufficiency of the evidence.

Appellant contends that the State failed to establish malice and intent to kill, and failed to identify appellant as the party responsible for the fatal injuries.

Shortly before 6:00 p. m. on May 6, 1970, appellant took his three-year-old illegitimate son, Kenneth S. Wagner, to Parkland Hospital in Dallas. The boy was pronounced dead on arrival. Officer Kimbrell, on duty at the hospital, viewed the body and testified that the boy was "one of the worst badly bruised children that I've ever seen, and I've saw [sic] several of them". He testified that the boy appeared to have been struck with some kind of instrument. Officer Kimbrell questioned appellant and appellant stated that he had whipped the boy that morning.

Patsy Anthony testified as a witness for the State that she was the boy's mother.

She stated that the physical custody of the child was with her some of the time and with the appellant some of the time. She testified that appellant had threatened her several times in the past, and that appellant had admitted that bruises she observed on the child were caused by whippings administered by appellant.

Through Dr. Sturner, a Dallas County medical examiner, the autopsy report regarding the child's body was received in evidence. The report indicated that the child weighed 40 pounds and appeared to be three years old. The report further described extensive injuries, including the following:

"subcutaneous and muscular hemorrhage (fresh bleeding) in the soft tissues of the back;

hemorrhage around spinal cord;

brain hemorrhage;

bruises, skin scrapes, extensive hemorrhage of the neck;

extensive hemorrhage and bruises in chest and upper left arm;

bruises and scrapes on the right cheekbone, the forehead, and chin;

injuries to legs and buttocks at least a month old."

The autopsy indicated that there were more than 25 recent injuries to the child's back, and that there was at least a half pint of fresh and clotted blood beneath the skin.

Dr. Sturner testified that the boy died from multiple injuries inflicted by a human being using some object, the nature and description of which was unknown and could not be determined. He testified that the head injuries, together with the brain hemorrhage, would be capable of causing death, as well as the back injuries. It was Dr. Sturner's opinion that the injuries were inflicted within a twenty-four hour period prior to death and that the injuries could not have been caused by a fall or an animal because of the severity of the injuries, their location, pattern, shape, and an absence of "gnawing" or "gouging". He further testified that in his opinion, except for the injuries to the buttocks and legs, all the injuries occurred at about the same point in time.

Appellant, testifying in his own behalf, stated that on the morning of May 6 the child had dirtied his pants and that he had bathed the child in the bathtub and during the bath the child intentionally defecated. This caused appellant to whip the child, appellant testifying that he only used a plastic ladies' belt and only gave the boy "5–6 licks" across the shoulder. Appellant was unable to account for the fact that there were more than 5 "whelps" on the boy's back. Appellant insisted that he had never noticed the bruises and other injuries to the boy and could not account for their presence, other than by suggesting that they must have been caused by a fall. Appellant testified that after lunch he took a nap and the boy went out to play. The child, according to appellant, came in and told him that he had fallen and hurt his head. Appellant also stated that the boy fell off the couch that same afternoon. Shortly thereafter, he took the boy to the hospital.

■ We find that the evidence was sufficient for the trial court to find intent and malice. In considering whether or not an assault was committed with the intent to murder, this Court must take into account the extent of the injuries and the relative size and strength of the parties. Encina v. State, Tex.Cr.App., 471 S.W.2d 384. The extent and severity of the injuries do not reflect a simple spanking. Any violent assault on such a young child may be reasonably expected to cause death. The trial judge concluded from the evidence, including photographs taken at the hospital showing the injuries, that malice and intent were shown. We will not disturb this finding.

Additionally, appellant contends that the evidence does not establish that he inflicted the fatal injuries. Appellant testified that he whipped the boy on May 6. The child had been with appellant the preceding day and night. Appellant's father, with whom appellant and the child were living, testified that he had seen appellant whip the boy with belts and switches, but that he had never whipped the boy himself. In light of appellant's admission that he whipped the child and the testimony of Dr. Sturner that the injuries were inflicted by a human being and could not have been the result of a fall, we find the evidence sufficient to show that appellant inflicted the injuries which resulted in death. Cf. Encina v. State, supra, and cases there cited.

Finding no reversible error, the judgment is affirmed.