NO. 07-01-0425-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



APRIL 24, 2003



______________________________




ALEXIUS JAMALL NELSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 184TH DISTRICT COURT OF HARRIS COUNTY;



NO. 833021; HONORABLE JAN KROCKER, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

ON MOTION FOR REHEARING



 On original submission, without addressing appellant's legal sufficiency issue, we
reversed appellant's conviction and remanded the case to the trial court for a new trial. 
The State has filed a motion for rehearing. We withdraw our original opinion and
judgment of January 8, 2003, and, in lieu thereof, issue the following opinion to also
address appellant's legal sufficiency issue; otherwise the State's motion for rehearing is
overruled.

 Following his plea of not guilty, appellant Alexius Jamall Nelson was convicted by
a jury of capital murder and punishment was assessed by the court at confinement for life. 
Presenting five points of error, appellant contends (1) the trial court erred in finding the
officers had probable cause to believe he committed a felony and was about to escape
under article 14.04 of the Texas Code of Criminal Procedure; (2) the trial court erred in
finding that the taint from the illegal arrest was sufficiently attenuated to render his
confession voluntary; (3) the evidence is legally insufficient to prove that he knowingly or
intentionally caused the death of the complainant; (4) the evidence is factually insufficient 
to prove that he knowingly or intentionally caused the death of the complainant; and (5)
the trial court erred in permitting an absolutely disqualified juror to serve on the jury. 
Based upon the rationale expressed herein, we reverse and remand. 

 Considering the points of error in logical rather than sequential order, we commence
our analysis by reviewing appellant's third point of error by which he contends the
evidence was legally insufficient to prove that he knowingly or intentionally caused the
death of the victim. We disagree. 

 In evaluating the legal sufficiency of the evidence, we view the evidence in the light
most favorable to the verdict, and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Cardenas v. State,
30 S.W.3d 384, 389 (Tex.Crim.App. 2000) (citing Jackson v. Virginia, 443 U.S. 307, 319,
99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)). In our review of the legal sufficiency
point, we consider all of the evidence before the jury regardless of whether it was properly
admitted. Johnson v. State, 871 S.W.2d 183,186 (Tex.Crim.App. 1993), cert. denied, 511
U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994). 

 The victim was born on August 25, 1998. He lived with his mother Twyla and his
sister Destiny at an apartment in Houston. In November of 1999, appellant, Twyla's
boyfriend, moved in with the family. On the evening of January 6, 2000, Twyla attended
bible study at her church. That evening, Destiny stayed with a relative while the victim
remained at the apartment with appellant. When Twyla returned home, appellant informed
her the victim had vomited while she was gone. Ten minutes later, the victim threw up
again and appeared to have a fever. That night, he slept in bed with appellant and Twyla.

 On the following morning, Twyla, who was training to be a phlebotomist at a local
blood center, sent Destiny to school as she ordinarily did. Because he was sick the night
before, however, Twyla allowed the victim to remain at home with appellant, rather than
attend the day care facility in which he was enrolled. During her lunch break, Twyla called
home to check on the child. Appellant told her the child was throwing up blood, so he was
going to call 911. It was, however, a neighbor who ultimately contacted emergency
personnel and began CPR on the child. 

 When paramedics arrived at the scene, the child had no pulse, was not breathing,
and had only minimal heart activity. Despite efforts to resuscitate him, he died at the
hospital. As was the policy of the Houston Police Department, officers responded to the
hospital to investigate a child death. There, they encountered appellant, who explained
he had been babysitting the child when the child fell and hit his head on two separate
occasions that morning. Appellant agreed to accompany the officers to Twyla's apartment
to demonstrate the chain of events leading to the injuries. Thereafter, officers requested,
and appellant consented to give, a written statement regarding those events.

 Though officers initially believed the child's death to have been the result of natural
causes, the autopsy of the child changed their minds. Doctor Lee Ann Krishnan, the
deputy medical examiner who conducted the autopsy and compiled the report, determined
the child died as a result of blunt force trauma to the head, chest, and abdomen. Among
others, Dr. Krishnan documented the following injuries: contusions of the head, chest, and
abdomen, contusions/lacerations inside the mouth with multiple loose teeth, a subgaleal
hemorrhage, a contusion of the right atrium of the heart, a hemorrhage of the thymus,
multiple rib fractures, contusions and lacerations of the right lung, multiple and severe
lacerations of the liver, and a severe laceration of the right kidney. Because of the extent
and severity of the injuries, Dr. Krishnan declared the death a homicide. 

 Based upon the results of the autopsy, officers arrested appellant and obtained a
second, voluntary statement from him. In the statement, appellant confessed he initially
lied to authorities about how the child received the injuries because he was scared. In the
statement, appellant provided a very different account of the events of the morning of
January 7, 2000. Appellant explained he awoke that morning to the sound of the child
crying. Feeling "stressed out" over having to take care of his girlfriend's baby on only four-hours sleep, appellant "got up and punched him three times in the ribs." Appellant
conceded he probably hit the baby in the stomach as well. After the initial beating, the
child stopped crying for several minutes, but soon commenced crying again. At that point,
appellant punched him in the head about two or three times. Appellant believed one of
those blows was to the child's face. Appellant claimed he hit the child hard because he
was still upset. 

 Doctor Krishnan testified the child's injuries were consistent with an adult striking
him with a hand or fist. According to the doctor, he suffered at least 13 individual blows
to his body. She indicated the presence of rib fractures alone was indicative of child
abuse. Moreover, she believed he suffered his head injury between 12 and 24 hours of
his death. Doctor Krishnan also concluded, because of the loss of blood, he would have
survived less than an hour after sustaining the injuries to his kidney, liver, and lungs. 
Finally, in response to appellant's defensive theory at trial, Dr. Krishnan testified she "[felt]
very strongly that it's impossible to receive all of those [internal] injuries just from
incorrectly performing CPR and performing it too forcefully."

 The indictment charged appellant with intentionally and knowingly causing the
death of the victim, an individual under six years of age. As a result, the State was
required to prove appellant either intended to cause the death or was aware his conduct
was reasonably certain to cause death. See Tex. Pen. Code Ann. § 6.03(a) & (b) (Vernon
2003); cf. Dunn v. State, 13 S.W.3d 95, 98 (Tex.App.-Texarkana 2000, no pet.) (holding
in an injury to a child prosecution, the State must put on some evidence the accused either
acted with intent to cause serious bodily injury to the child or knew his actions were
reasonably certain to cause that result). In considering whether appellant possessed the
requisite mental state to support his conviction for capital murder, we must take into
account the extent of the injuries and the relative size and strength of the parties. Lindsey
v. State, 501 S.W.2d 647, 648 (Tex.Cr.App. 1973), cert. denied, 416 U.S. 944, 94 S.Ct.
1953, 40 L.Ed.2d 296 (1974). 

 Appellant was 18 years of age and weighed between 135 and 140 pounds at the
time of the offense, while the child weighed merely 19 pounds and was 16 months old. 
Despite that differential, appellant, by his own admission, struck the child at least five times
because he was "upset" over being awakened. Appellant also conceded he had sole
access to the child on the morning of his death. (2) Those admissions are corroborated by
the medical examiner's testimony concerning the extent and severity of the injuries, the
timing of their infliction, and the mechanism for causing them. We find these
circumstances sufficient for a jury to reasonably infer appellant acted with intent to cause
the child's death, or that he knew his actions were reasonably certain to cause that result. (3) 
Indeed, any violent assault on such a young child may be reasonably expected to cause
death. Lindsey, 501 S.W.2d at 648. We, therefore, find the evidence legally sufficient to
support the conviction. Appellant's third point of error is overruled.

 Continuing our analysis in logical order, we next consider appellant's fifth point of
error by which he contends the trial court erred in permitting an absolutely disqualified
juror to serve on the jury because it is dispositive of this appeal and pretermits our
consideration of his remaining points. So that the controlling constitutional provisions and
statutes may be considered in context with the record as reflected during jury selection,
we begin by reviewing a portion of the reporter's record material to our analysis.

 The trial court commenced jury selection on May 2, 2001, and announced, "we're
going to try really hard to finish this by 5:00 o'clock." After voir dire was almost completed
and while the trial judge was considering excuses from members of the panel, prospective
juror number 19 announced to the court that he had not been "honest in swearing in" and
told the court that he had a previous conviction for misdemeanor theft. This
announcement prompted conferences and discussions among the judge and counsel that
cover approximately ten pages of the reporter's record, including two announcements by
the trial judge to the reporter to "go off the record" and several bench conferences. When
the disqualification was first raised by the prospective juror, the judge commented: (4) 

 The Court: I think the problem is that that [sic] makes him disqualified, even
a Class C Theft, if you paid a fine. 


After the prospective juror told the court that he paid a fine, the trial court responded:

 The Court: I think that disqualified him. We can go back and look at the
statute.


Noting the difficulty in screening excuses, when the trial judge said that she needed to look
at the law, the reporter's record reflects that defense counsel suggested that instead of
excuses, the issue was disqualification and handed a law book to her. 

 While reviewing a part of the Government Code and section 35.16 of the Texas
Code of Criminal Procedure, (5) the discussion continued:

 The Court: However, if you look at 35.16, it says a Challenge for Cause may
be made by either the State or the defense if someone has been convicted
of theft. So if neither of you challenge, he may stay on the jury.

 [Prosecutor]: But go down another section or two.

 The Court: Okay.

 [Prosecutor]: The next section or two.

 The Court: Remember, there is a follow-up section.

 [Prosecutor]: Yes, ma'am. I think 36.15, maybe says if somebody is
disqualified under 3--Section from the one you just read, they shall not be
empaneled. 


While both counsel were reviewing the applicable rules, the judge took the opportunity to
inform the prospective jurors of the practice regarding strikes and that it is preferable to
have 32 qualified people because each side gets ten strikes. After the judge's explanation
a venireperson inquired about restroom privileges and another asked when the parking
lot closed. After a very brief recess, the judge asked counsel: (6)

 The Court: Might No. 19 be on the jury? Let's get that cleared up. Mr. Olez,
may we see you back at the bench, please, sir.

 (Bench discussion). 

 The Court: In answer to your question, there is a special Article which
says-and is not with the others, it's all by itself-it says that someone who
has a theft conviction may not be impaneled unless both parties consent. So
that's where we are now.

 

(Emphasis added). The judge then asked both sides if they consented to impaneling Mr.
Olez and the prosecutor and defense counsel responded that they had no objection.


Absolute Disqualification


 We commence our analysis by noting three relevant provisions of the Texas
Constitution. Under article I, section 10, appellant is guaranteed a "speedy public trial by
an impartial jury." Next, article I, section 15 provides that the "right of trial by jury shall
remain inviolate" and directs the Legislature to pass laws to "maintain its purity and
efficiency." Finally, the policy established by article VII, section 4 of the Constitution of
1845, now set out in article XVI, section 2, declares that laws shall be enacted to exclude
persons convicted of bribery, perjury, forgery, or other high crimes from serving on juries
or holding public office. In the context of this proceeding, article I, section 15 and article
XVI, section 2 are "party" neutral in that they inure to the benefit of all citizens of the State,
including those who may be defendants in criminal prosecutions. 

 Texas public policy seeks to ensure the integrity and purity of juries by excluding
persons from jury service whose moral status has been judicially established as criminal. 
See Tex. Const. art. I, §15 and art. XVI, § 2. In Ex Parte Bronson, 158 Tex. Crim. 133, 254
S.W.2d 117 (1952), the Court held that a judgment was not subject to collateral attack by
habeas corpus because a member of the jury was absolutely disqualified. (7) However, after
reviewing numerous decisions of the Court of Criminal Appeals, id. at 121, the Court
summarized the rules applicable to the impaneling of an unqualified juror as follows:


 when it appears to the trial judge that a prospective juror is subject to
challenge under subsections 3, 4, or 5 of Art. 616, C.C.P., the juror
shall not be impaneled, without regard to whether he be challenged,
and even though both the state and the defendant consent;
 if such a juror be impaneled and it becomes known to the trial judge
prior to the return of a verdict that he is so disqualified, the judge
should take action to remove the disqualified juror;
 if, upon motion for new trial, it be shown that one or more of the jurors
impaneled was disqualified under said subsections 3, 4, or 5 of Art. 
616, C.C.P., a new trial shall be ordered, without regard to a showing
of injury or probable injury or of consent or waiver.



(Emphasis added). Hughes v. State, 105 Tex.Crim. 57, 284 S.W. 952 (1926) has
uncommon significance here because it holds that disqualification of a juror for conviction
of an offense under former subdivision 3 of article 692 of the Code of Criminal Procedure
(then 616) cannot be waived. Also, under article 35.16, although reasons for challenge
for cause numbers one and five through eleven can be waived, reasons two, three, and
four are not subject to waiver. See paragraph following 35.16(11) providing:

 No juror shall be impaneled when it appears that he is subject to the second,
third or fourth grounds of challenge for cause set forth above, although both
parties may consent. 


(Emphasis added). This provision prohibits a waiver or consent by the State as well as the
defendant.

 Chapter 35 of the Texas Code of Criminal Procedure, entitled "Formation of the
Jury," contains the provisions for selection of a jury in criminal prosecutions. As directed
by article X, section 15 and article XVI, section 2, the Legislature included provisions
prohibiting jury service by persons who have been convicted of certain crimes. Pursuant
to article 35.10 of the Code, the trial court is required to try the qualifications of those
persons summoned for jury service. In testing their qualifications per article 35.12, the trial
court is directed to inquire: 

 1. Except for failure to register, are you a qualified voter in this county and
state under the Constitution and laws of this state?

 2. Have you ever been convicted of theft or any felony?

 3. Are you under indictment or legal accusation for theft or any felony?


 Among others reasons, article 35.16(a) provides that a challenge for cause may be
made to a particular juror by the State or defense:

 2. That he has been convicted of theft or any felony; 

 3. That he is under indictment or other legal accusation for theft or any
felony;

 4. That he is insane. 

In addition, article 35.19 entitled "Absolute Disqualification" prohibits certain persons from
jury service by providing: 


 No juror shall be impaneled when it appears that he is subject to the second,
third or fourth cause of challenge in Article 35.16, though both parties may
consent. 


(Emphasis added). Applying articles 35.16 and 35.19, in Green v. State, 764 S.W.2d 242,
247 (Tex.Cr.App. 1989), the Court distinguished between an absolutely disqualified juror
and a disqualified juror and noted:

 For example, a prospective juror is absolutely disqualified from serving on a
jury and must be excused from the panel according to Art. 35.19 V.A.C.C.P.,
if the prospective juror (1) has been convicted of theft or any felony, (2) is
under indictment or other legal accusation for theft or any felony, (3) or is
insane. 


(Emphasis in original). The Court concluded that the trial court should sua sponte excuse
a juror absolutely disqualified by article 35.19. See also Butler v. State, 830 S.W.2d 125,
130 (Tex.Cr.App. 1992) (en banc) (noting that the trial court must excuse an absolutely
disqualified venireperson without regard to trial court discretion applicable to excusing an
otherwise qualified venireperson on other grounds). (Emphasis in original). 

 Here, the trial court's two announcements that prospective juror number 19 was
disqualified were correct; however, for unexplained reasons, whether limited research
resources or time constraints, the trial court substituted the word "unless" for the statutory
words "although" and "though" as used in articles 35.16 and 35.19. Moreover, because
of the sound public policy expressed in articles 35.16 and 35.19 providing that the
prospective juror was disqualified notwithstanding consent by both parties, and
considering that absolute disqualification cannot be waived, counsels' announcements that
they had no objection are ineffective to overcome the error of impaneling the absolutely
disqualified juror.

First Time on Appeal



 We next consider the State's contentions that even if error occurred, it was not
preserved for review. We disagree. As a general rule, in order to preserve a complaint
for review on appeal, the claimed error must have been presented in the trial court thereby
providing the trial court the opportunity to correct any error during the course of the trial. 
See Tex. R. App. P. 33.1(a); Norris v. State, 902 S.W.2d 428, 446 (Tex.Cr.App. 1995),
cert. denied, 516 U.S. 890, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995). Here, however, the
record demonstrates that the prospective juror's disqualification was raised in the trial
court before the jury was selected which disclosure prompted considerable discussion,
research, and consideration by the trial court. Also, counsels' discussion with the trial
judge regarding the disqualification covers approximately ten pages of the reporter's
record. From the information provided by the prospective juror of his theft conviction, the
trial court concluded that the juror was disqualified, but notwithstanding the constitutional
implications, proceeded to mistakenly impanel him concluding that the disqualification
could be waived. Moreover, this contention is analogous to a sufficiency of the evidence
challenge, see generally Givens v. State, 26 S.W.3d 739, 740 (Tex.App.--Austin 2000, pet.
ref'd); Flanary v. State, 166 Tex.Crim. 495, 316 S.W.2d 897, 898 (1958), or error based
on an ex post facto claim. See generally Ieppert v. State, 908 S.W.2d 217 (Tex.Cr.App.
1995) (holding that an ex post facto claim may be presented for the first time on appeal
because a categorical prohibition may not be waived). See also Blue v. State, 41 S.W.3d
129,131 (Tex.Cr.App. 2000).

 Is Error Reversible? 


 The State contends that error, if any, was harmless and that under article 44.46 of
the Code of Criminal Procedure, (8) appellant's conviction cannot be reversed on the ground
that an absolutely disqualified person was impaneled on the jury. We disagree. Following
the decision in Thomas v. State, 796 S.W.2d 196, 199 (Tex.Cr.App. 1990), article 44.46
was added to Chapter 44, entitled "Appeal and Writ of Error." Without amending or
modifying articles 35.16 or 35.19, article 44.46 addresses the reversal of conviction where
an absolutely disqualified person serves on a jury. Under article 44.46(1), a conviction is
reversible without a showing of harm if the defendant "raised" the disqualification before
the verdict was entered; however, under (2) where the disqualification is not discovered
or brought to the attention of the trial court until after the verdict is entered, the conviction
is not reversible absent a showing of significant harm. However, because the
disqualification could not be waived, see paragraph 11 of article 35.16, and the error
occurred when the trial court did not sua sponte excuse the disqualified juror during the
jury formation as required by Green v. State, 764 S.W.2d 242, 246 (Tex.Cr.App. 1989),
articles 44.46(1) and (2) are not applicable. See also Pogue v. State, 553 S.W.2d 368, 370
(Tex.Cr.App. 1977) (holding that where the trial court is on notice of error in seating the
panel before the jury is sworn, and the error is not corrected, automatic reversal is
required.) 

 The question of the absolute disqualification of juror number 19 was first brought
to the attention of the trial court during voir dire when juror number 19 told the judge that
he had not been "honest in swearing in" and that he had a prior conviction. As shown by
our review of the relevant portion of the discussion in the reporter's record, before the jury
was impaneled, the disqualification of the juror was discussed at a bench conference. 
While the question was being considered by the court, on one occasion, as defense
counsel handed a book to the trial judge, he suggested that instead of "excuses" the issue
was "disqualification." Even if applicable, article 44.46(1) does not require that the issue
be "raised" in a specific manner. Moreover, substantial compliance with requirements of
the Code of Criminal Procedure is sufficient. See Bennett v. State, 394 S.W.2d 804,
807(Tex.Cr.App. 1965); Aspilla v. State, 952 S.W.2d 610, 612-13 (Tex.App.--Houston
[14th Dist.] 1997, no pet.). Considering defense counsel's participation in conference with
the judge and prosecutor, the law of substantial compliance and the axiom that the law
does not require the doing of a "useless thing," Williams v. State, 549 S.W.2d 734, 737
(Tex.Cr.App. 1977), we conclude that for purposes of article 44.46(1), the defense "raised"
the issue of juror disqualification before the verdict was entered. 

 Citing Ford v. State, 73 S.W.3d 923 (Tex.Cr. App. 2002) and Jones v. State, 982
S.W.2d 386 (Tex.Cr.App. 1998), cert. denied, 528 U.S. 985, 120 S. Ct. 444, 145 L.Ed.2d
362 (1999), the State also argues that a harm analysis is required because the error
occurred during the jury selection process. However, those cases did not involve trial
court error in allowing an absolutely disqualified juror to be impaneled. Further, because
the error of the trial court was fundamentally erroneous, Blue, 41 S.W.3d at 131, and
article 44.46(1) does not require a showing of harm, a harm analysis under Cain v. State,
947 S.W.2d 262, 264 (Tex.Cr.App. 1997) (en banc), is inapplicable.

 By its motion for rehearing, the State argues that the effect of article 44.46
permitting a reversal if the disqualification is timely raised and Cain can be reconciled, if
we first confront the requirements of Cain. Then, the State argues that any error would not
constitute an error of constitutional dimension; rather, the existence of harm should be
tested by Rule 44.2(b) of the Texas Rules of Appellate Procedure. Assuming that article
44.46(1) applies and a harm analysis under Rule 44.2(b) is required, questions we do not
decide, for the reasons explained below, we conclude that it is likely the error had "some
adverse effect on the proceedings." Johnson v. State, 43 S.W.3d 1, 4 (Tex.Cr.App. 2001)
(en banc). 

 In Johnson, in conducting a harm analysis under Rule 44.2(b), the Court held that
under that record, denial of the defendant's challenges for cause was harmful. After
distinguishing Ovalle v. State, 13 S.W.3d 774 (Tex.Cr.App. 2000), the Court noted that the
reviewing court should assess harm from the context of the error. Johnson, 43 S.W.3d at
4. Here, as in Johnson, the context of the error affected the makeup of the jury which
implicated the constitutional guarantee of a right to trial by an impartial jury and was not
charge error, an error involving evidence, an error alleging improper jury argument, nor
the like. In Johnson, the Court further held: 

 it is the responsibility of the appellate court to assess harm after reviewing
the record and that the burden to demonstrate whether the appellant was
harmed by a trial court error does not rest on the appellant or the State.


43 S.W.3d at 5. In reviewing the record, we are to decide "whether it is likely that the error
had some adverse effect on the proceeding." Id. at 4. 

 According to the record, juror number 19 told the trial judge that he had a prior
conviction for misdemeanor theft. In addition, he admitted that he had not been truthful
in his "swearing in," thereby implicating the oath administered as required by article 35.02,
as well as the offense of aggravated perjury. Tex. Pen. Code Ann. § 37.02 (Vernon 2003). 
See Duffy v. State, 567 S.W.2d 197, 200 (Tex.Cr.App. 1978), cert. denied, 439 U.S. 991,
99 S.Ct. 593, 58 L.Ed.2d 666 (1978) (holding that statements or answers given by
prospective jurors during voir dire are given under oath). Because "the makeup of the jury
affects its decision," Johnson, 43 S.W.3d at 5, and considering that


 a determination of whether a prospective juror is (1) "impartial" or (2)
has any prior knowledge of the events or parties depends upon 
truthful answers to questions; 
 the requirement that the jury verdict be unanimous, not a 10-2 verdict;
 the members of the jury are the exclusive judges of the facts proved,
of the credibility of the witnesses and the weight to be given their
testimony;
 the standards of review of the evidence on appeal and the deference
which an appellate court must extend to jury verdicts; 
 Rule 606(b) of the Texas Rules of Evidence restricts examination of
jurors in a challenge to the validity of a verdict; and 
 the goal of maintaining the (1) impartiality, (2) "purity," and (3)
integrity of a jury is not only mandated by three provisions of the
Constitution as well as statutes, but is also based on common human
experience and is sound and logical,



we conclude that juror number 19 did not meet constitutional and statutory guidelines of
a trustworthy juror. Accordingly, we hold that under this record, because the makeup of
the jury affects its decision, it is likely that the error had some adverse effect on the
proceeding. Appellant's fifth point of error is sustained. Our disposition of this point
pretermits consideration of appellant's remaining points.

 Accordingly, the judgment is reversed and the cause is remanded to the trial court
for further proceedings.

 Don H. Reavis

 Justice



Do not publish.

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Texas case law is replete with holdings that when an adult defendant has had sole access to a child
at the time injuries are sustained, the evidence is sufficient to support a conviction for injury to a child, or
murder if the child dies. Garcia v. State, 16 S.W.3d 401, 405 (Tex.App.-El Paso 2000, pet. ref'd)(citing
Bryant v. State, 909 S.W.2d 579, 583 (Tex.App.-Tyler 1995, no pet.); Elledge v. State, 890 S.W.2d 843, 846
(Tex.App.-Austin 1994, pet. ref'd); and Butts v. State, 835 S.W.2d 147, 151 (Tex.App.-Corpus Christi 1992,
pet. ref'd)).
3. We do not overlook appellant's contention that his efforts to "help" the child belie any intent to cause
his death. Appellant's subsequent actions, however, do nothing to negate his intent to cause the child's
death at the time he inflicted the fatal injuries. Cf. Lindsey, 501 S.W.2d at 647 (finding defendant intended
to kill his three year old son despite the fact he took the child to the hospital following the beating).
4. In discussing disqualification with the prospective juror, the judge told him that "a whole verdict can
be thrown out if someone's" -- . . . not qualified.
5. All references herein are to the Texas Code of Criminal Procedure Annotated (Vernon 1989 & Supp.
2003) unless otherwise designated.
6. This suggests that the trial court was aware of the disqualification but was of the erroneous
impression that it could be waived.
7. At that time, Article 616, C.C.P. (currently 35.16), provided in part as follows:

 A challenge for cause is an objection made to a particular juror, alleging some fact which renderes
him incapable or unfit to serve on the jury. It may be made for any one of the following reasons:


* * * 


 3. That he has been convicted of theft or any felony.

 4. That he is under indictment or other legal accusation for theft or any felony.

 5. That he is insane or has such defect in the organs of seeing, feeling or hearing, or such bodily
or mental defect or disease as to render him unfit for jury service.


And Art. 619 (currently 35.19), provided:


 No juror shall be impaneled when it appears that he is subject to the third, fourth or fifth
clause of challenge in article 616, tho both parties may consent. 
8. Article 44.46, entitled Reversal of Conviction on the Basis of Service on Jury by a Disqualified Juror
provides:


 A conviction in a criminal case may be reversed on appeal on the ground that in the case
was absolutely disqualified from service under Article 35.19 of this code only if:


 (1) the defendant raises the disqualification before the verdict is entered;
or

 (2) the disqualification was not discovered or brought to the attention of the
trial court until after the verdict was entered and the defendant makes a
showing of significant harm by the service of the disqualified juror.