**Opinion filed December 12, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00321-CR

_____

## MEGHAN REBECCA WILSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 10491**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Meghan Rebecca Wilson, of injury to a child and assessed her punishment at confinement for twenty-five years. *See* TEX. PENAL CODE ANN. § 22.04(e) (West Supp. 2019). Appellant was then sentenced accordingly by the trial court. In her single issue on appeal, Appellant argues that the evidence presented at trial was insufficient to support her conviction because no

reasonable jury could have found, beyond a reasonable doubt, that Appellant acted with the requisite intent.  We affirm.

*Background Facts*

In October 2014, J.A., a three-year-old child, lived with her father and stepmother, Appellant.  J.A.'s two-year-old stepsister, K.W., and infant half-brother, E.A., also lived in the house.  On October 9, 2014, while at home with Appellant and two siblings, J.A. had a seizure and was taken to University Medical Center (UMC) in Lubbock.

At UMC, Appellant explained that J.A. and K.W. bumped heads while playing and that J.A. collapsed and began having a seizure.  K.W., however, was not hospitalized and apparently did not suffer any harm from the incident.  Moreover, doctors examined J.A. and noticed several injuries consistent with child abuse: bruising on her thighs, bottom, back, cheek, and forehead; a subdural hemorrhage; and a wrist fracture.  Still, irrespective of other signs of abuse, the examining doctors did not believe two small children bumping heads was sufficient to cause a subdural hemorrhage of the severity of J.A.'s immediate head injury.  Accordingly, the doctors determined that Appellant's explanation of the incident was inconsistent with J.A.'s injuries.  Upon her release from the hospital, CPS placed J.A. with Appellant's father.

J.A. continued to live with Appellant's father for the next six months, during which time she did not have a single seizure.  However, on June 3, 2015, after having moved back in with J.A.'s father and Appellant, J.A. had another seizure requiring hospitalization.  This time, the severity of J.A.'s condition required a lifesaving craniotomy.  Again, J.A. was transported to UMC in Lubbock.

As before, Appellant was alone with the children when J.A.'s seizure began.  Appellant explained to doctors that J.A. was playing outside when she became overheated and told Appellant she needed to throw up.  According to Appellant, J.A.

2

then began having a seizure and fell off the porch onto her bottom. Doctors again determined that Appellant's explanation was inconsistent with J.A.'s injuries. According to the doctors who treated J.A., her injuries were more consistent with a violent blow to the head, a two- to three-story fall, a car accident, or child abuse—not a fall from standing height. Doctors further determined that J.A.'s symptoms would have manifested immediately or within a very short time after the trauma.

Appellant was ultimately indicted on June 5, 2017, for injury to a child. At trial, the jury convicted Appellant and subsequently sentenced her to confinement for a term of twenty-five years. This appeal followed.

*Evidentiary Sufficiency*

In Appellant's single issue on appeal, she argues that the evidence presented at trial is insufficient to support her conviction for injury to a child. Specifically, Appellant claims that there is no evidence that she *intentionally* or *knowingly* caused injury to a child. We disagree.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the

verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits the offense of injury to a child if, by act or omission, she causes serious bodily injury to a child fourteen years of age or younger. PENAL § 22.04(a)–(c). As in this case, the offense is a felony of the first degree if the conduct is committed intentionally or knowingly. *Id.* § 22.04(e). The offense of injury to a child is a result-oriented offense that requires a mental state that relates, not to the specific conduct, but to the result of that conduct. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Haggins v. State*, 785 S.W.2d 827, 828 (Tex. Crim. App. 1990). Accordingly, at trial, the State had to prove that Appellant intentionally or knowingly caused the resulting injuries to J.A. *See Johnston v. State*, 150 S.W.3d 630, 634 (Tex. App.—Austin 2004, no pet.).

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. PENAL § 6.03(a) (West 2011). A person acts knowingly with respect to a result of his conduct when he is aware his conduct is reasonably likely to cause the result. *Id.* § 6.03(b). The two mental states are closely related:

> In the context of a result-type offense . . . the distinction between knowing and intentional is narrow, and is preserved only because of the criminal law's traditional creation of specific intent offenses such as burglary, arson, and theft. We say "only" because there is little difference, in terms of blameworthiness, between one who wills a particular result and one who is willing for it to occur—between, for example, one . . . who shoots into a moving car, intending to kill the driver, and one who shoots into a moving car he knows is occupied. The formulated distinction between intentional and knowing, as to results, is thus between desiring the result and being reasonably certain that it will occur.

*Johnston*, 150 S.W.3d at 635 (alterations in original) (quoting *Dusek v. State*, 978 S.W.2d 129, 134 (Tex. App.—Austin 1998, pet. ref'd)).

The jury may infer both intent and knowledge from any facts that are probative of the existence of these mental states, including the defendant's acts, words, or conduct, and from the nature of the injury inflicted on the victim. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). The jury may further consider the extent of the victim's injuries, the method used to produce the injuries, and the relative size and strength of the parties. *Patrick*, 906 S.W.2d at 487 (citing *Lindsey v. State*, 501 S.W.2d 647, 648 (Tex. Crim. App. 1973)). Indeed, "[t]his has been the rule in Texas for over 100 years." *Manrique*, 994 S.W.2d at 649.

In this case, J.A.'s injuries told a story of consistent, long-term abuse. Throughout the examination of J.A.'s body, doctors uncovered broken vertebrae, a fractured wrist, and countless bruises. The child also had a severe abrasion to her right ear. Many of these injuries occurred throughout different episodes, further raising suspicions of child abuse. In addition to J.A.'s numerous other injuries, she also sustained two subdural hemorrhages, one of which required lifesaving surgery and forced the then four-year-old girl into a coma. The injuries were ultimately severe enough to cause permanent disabilities to J.A. According to doctors, the injuries were likely the result of tremendous force, such as a two- to three-story fall, a car crash, or child abuse.

When questioned, Appellant gave explanations that were wholly inconsistent with J.A.'s injuries. Inferring, as permitted, from the defendant's words and the nature of the victim's injuries, a reasonable jury could have found, beyond a reasonable doubt, that Appellant intentionally or knowingly caused the injuries to J.A. This is especially true when considering the relative size and strength of Appellant and J.A. and the degree of force necessary to cause such severe head

5

trauma.  We hold that the evidence is sufficient to support the jury's verdict. Accordingly, we overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


December 12, 2019

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.